IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DANIEL HILL, ) | |
|     Plaintiff, ) | |
| v. ) | No. 2:07-CV-82 AS |
| ) | |
| CHASE BANK USA, NA and MANN ) | CLASS ACTION |
| BRACKEN, L.L.C., ) | |
| ) | JURY DEMANDED |
|     Defendants. ) | |

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT
MANN BRACKEN, L.L.C. TO SECOND AMENDED CLASS ACTION COMPLAINT**

Defendant, MANN BRACKEN, L.L.C. ("MBLLC"), by its attorneys, and for its Answer and Affirmative Defenses to the Second Amended Class Action Complaint, states as follows:

1. Plaintiff Daniel Hill ("Hill") files this class action complaint seeking redress for Defendant, Mann Bracken, L.L.C.'s, ("Mann"), violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA") and Chase Bank USA, NA's ("Chase"), violations of the Fair Credit Billing Act, 15 D.S.C. § 1666 and Regulation Z, 12 C.F.R. § 226.13, *et seq.*, and for declaratory and injunctive relief against Chase finding that: 1) the alleged arbitration agreement that Chase asserts governs the agreement between Chase and Hill is unenforceable as it is substantively and procedurally unconscionable; and/or 2) that the alleged arbitration agreement is unenforceable as to Hill in that no such agreement exists between himself and Chase; and/or 3) that the award of the arbitrator rendered against Hill is void as the arbitrator exceeded his powers, in that among other things, Hill opposed arbitration based upon the absence of an agreement to arbitrate. No arbitration agreement was physically presented as part of the arbitration demand. Thus, the award of the arbitrator finding that "on or before October 09, 2006 the Parties entered into a valid written agreement to arbitrate their dispute" was made without even having evidence of the existence of the contract.

**ANSWER:** MBLLC admits that plaintiff Daniel Hill has filed the Second Amended Class Action Complaint, but denies that he is entitled to any of the relief requested. MBLLC admits that an arbitrator made an award in favor of Chase Bank USA, N.A. (the "Bank") and against plaintiff which speaks for itself and is valid and binding. MBLLC denies all other allegations in paragraph 1.

**Jurisdiction and Venue**

2. This Court has federal question jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. §1692k, and 15 U.S.C. § 1666.

**ANSWER:** MBLLC denies the allegations in paragraph 2. Because there was an arbitration agreement between plaintiff and the Bank and its agents, and because the disputes between plaintiff and the Bank were already submitted to arbitration and decided by an arbitrator, this court has no jurisdiction.

3. Supplemental jurisdiction over the state law claims is proper under 28 U.S.C. § 1367.

**ANSWER:** MBLLC denies the allegations in paragraph 3.

4. Venue is proper in this district under 28 U.S.C. §1391(b) as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

**ANSWER:** MBLLC denies the allegations in paragraph 4.

5. Venue is also proper in this district because Defendants can be found, have agents, and transact business here and the interests of justice require maintenance of the action in this district.

**ANSWER:** MBLLC denies the allegations in paragraph 5.

**Parties**

6. Daniel Hill is a citizen of Indiana and a consumer as that term is defined by FDCPA § 1692(a)(3), in that the alleged debt that Defendant sought to collect from him is a consumer debt as defined by the FDCPA, § 1692a(5) in that it was originally incurred for personal, family, or household purposes.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations of paragraph 6.

7. Chase Bank is a national association with its main office in Newark, Delaware.

**ANSWER:** MBLLC admits the allegations in paragraph 7.

8. Chase Bank issues and services credit cards and is therefore subject to the Truth in Lending Act, 15 U.S.C. § 1640, *et seq*.

**ANSWER:** MBLLC admits the allegations in paragraph 8.

9. Chase Bank is subject to compliance with the Fair Credit Billing Act, 15 U.S.C. § 1666 and Regulation Z, 12 C.F.R. § 226.13, *et seq.*, with regard to the issuance and servicing of credit card accounts such as the account with the Plaintiff.

**ANSWER:** MBLLC admits the allegations in paragraph 9.

6259329v1 881998

10. Defendant Mann Bracken, L.L.C. is a debt collector with a principle [sic] place of business in Atlanta, Georgia.

**ANSWER:** MBLLC admits that, at certain times and with respect to certain accounts, it acts as a debt collector within the meaning of the FDCPA, but only with respect to debts as defined in the FDCPA. MBLLC admits that its principal place of business is in Atlanta, Georgia. MBLLC denies all other allegations in paragraph 10.

11. Defendants each do business in this District.

**ANSWER:** MBLLC admits the allegations in paragraph 11.

12. Chase has submitted to the jurisdiction of this court by virtue of having filed is [sic] answer to the Plaintiff's verified complaint on or about April 12, 2007.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 12.

13. Defendant Mann Bracken, L.L.C. is regularly engaged in the business of collecting debts allegedly owed by consumers.

**ANSWER:** MBLLC admits the allegations in paragraph 13, but only with respect to debts as defined in the FDCPA. MBLLC denies all other allegations in paragraph 13.

14. Mann Bracken, L.L.C is a "debt collector" as that term is defined by Section 1692a(6) of the FDCP A.

**ANSWER:** MBLLC admits the allegations in paragraph 14 but only with respect to debts as defined in the FDCPA and MBLLC otherwise denies the allegations in paragraph 14.

15. Daniel Hill is a consumer as that term is defined by FDCPA § 1692(a)(3), in that the alleged debt that Defendant sought to collect from him is a consumer debt as defined by the FDCPA, § 1692a(5) in that it was originally incurred for personal, family, or household purposes.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 15.

**Factual Allegations**

16. Hill entered into an open-ended credit transaction with Wachovia, credit card number 4118 1602 9813 2120. The open-ended credit account was used primarily or exclusively

3

for personal, family, and/or household purposes. A copy of the document provided by Wachovia to the Plaintiff when he opened his account is attached as Exhibit A.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 16.

17. On information and belief, no arbitration agreement existed when Hill opened his account with Wachovia and was issued a credit card number 4118 1602 9813 2120 or if one did exist, Hill was not made aware of it before signing up for the card.

**ANSWER:** MBLLC denies the allegations in paragraph 17.

18. The terms of the agreement between Hill and the creditor on the account, (asserted by Chase to be Chase), specify that if the consumer thinks that his bill is wrong all the consumer needs to do is send the bank a letter with the consumer's account number, the dollar amount of the suspected error, describe the error and if you need more information, describe the item you are not sure about. Exhibit A.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 18.

19. According to the terms of the agreement, after the creditor receives the letter it can not try to collect the amount in question or report the matter as delinquent. Exhibit A

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 19.

20. Moreover, the agreement states that if the creditor's explanation does not satisfy the consumer while the bank can report the debt as delinquent, the creditor must also tell anyone it reports the debt to that the consumer is questioning the bill. Additionally, the creditor must tell the consumer to whom the debt is being reported. Exhibit A

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 20.

21. At some point better known to the Defendants, Chase contends that it acquired Hill's credit card, account number 4118 1602 9813 2120. Along with acquiring this account, Chase also acquired all obligations associated with the account.

**ANSWER:** MBLLC admits that Chase contends it acquired the credit card account. MBLLC lacks knowledge or information sufficient to admit or deny all other allegations in paragraph 21.

4

22. Under its purported authority in acquiring the open-ended credit card account, Chase submitted to Hill periodic statements reflecting extensions of credit, costs, and fees.

**ANSWER:** MBLLC admits that after Chase acquired the credit card account, Chase sent to Hill periodic statements relating to the account which statements speak for themselves. MBLLC lacks knowledge or information sufficient to admit or deny all other allegations in paragraph 22.

23. According to Exhibit B, Hill's credit card statement with a "Statement Date" of 09/05/05 - 10/04/05, there was no past due balances on Hill's credit card account, account number 4118 1602 9813 2120. Additionally, according to Exhibit B, the APR for purchases was Prime and if in default, Prime plus 14.99%. As of the date of this statement, Hill had not been declared in default under his open-ended credit account being serviced by Chase for his credit card account, number 4118 1602 9813 2120.

**ANSWER:** MBLLC states that the statement marked as Exhibit B speaks for itself. Except as stated in Exhibit B, MBLLC lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

24. According to Exhibit B, Hill's credit card statement with a "Statement Date" of 10/05/05 - 11/04/05, there was no past due balances on Hill's credit card account, account number 4118 1602 9813 2120. As of the date of this statement, Hill had not been declared in default under his open-ended credit account being serviced by Chase for this credit card account.

**ANSWER:** MBLLC states that the statement marked as Exhibit B speaks for itself. Except as stated in Exhibit B, MBLLC lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

25. According to Exhibit B, Hill's credit card statement with a "Statement Date" of 11/05/05 - 12/04/05, there was no past due balances and it had a payment due date of 12/29/05. As of the date of this statement, Hill had not been declared in default under his open-ended credit account being serviced by Chase for his charge account, number 4118 1602 9813 2120.

**ANSWER:** MBLLC states that the statement marked as Exhibit B speaks for itself. Except as stated in Exhibit B, MBLLC lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

26. Four days after the due date for payment on this credit card, on January 3, 2006, Chase unilaterally increased the APR on Hill's credit card to Prime plus 20.99%, effectively

28.24% APR! *See* Exhibit C. Not only did this decision by Chase conflict with the prior representations that Hill's APR rate for purchases in case of default was 14.99%, (as reflected by Exhibit D), but Hill believed the APR increase was incorrect due to the fact that he was not in default.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 26.

27. In fact, in reviewing Hill's credit card statement with a "Statement Date" of 12/05/05 - 1/04/06, (attached as Exhibit E), there is no "past due amount" reflected, and the due date for any future payment was 1/29/06.

**ANSWER:** MBLLC states that the statement attached as Exhibit E speaks for itself. Except as stated in Exhibit E, MBLLC lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

28. Based upon the above billing error, Hill sent Chase a letter on January 8, 2006 stating: "I am disputing the percentage rate on my account along with requesting a full validation of my account." *See* Exhibit F.

**ANSWER:** MBLLC admits that a letter was sent to Chase dated January 8, 2006, and a copy of said letter is attached as Exhibit F. Said letter speaks for itself. MBLLC denies all other allegations in paragraph 28.

29. Included in Hill's notice of billing dispute, he asked for the documents giving Chase authority to assert the outrageous 28.24% APR interest rate by stating: "provide me copies of any signed papers that show I agreed to pay what you say I owe." Hill also stated he wanted the payment history on the account.

**ANSWER:** The January 8, 2006, letter speaks for itself and should be read in its entirety. MBLLC denies Hill's characterization of said letter, and denies all other allegations in paragraph 29.

30. Defendant received Hill's letter on January 13, 2006.

**ANSWER:** MBLCC denies that it received Hill's letter on January 13, 2006. MBLLC lacks knowledge or information sufficient to admit or deny all other allegations in paragraph 30.

31. In spite of Hill's request for correction of the error and information explaining how the APR on his account jumped, Chase declared the debt past due in the amount of $186.00

6

and imposed late fees and over the limit fees of $39.00 and $35.00 respectively. *See* Hill's credit card statement with a "Statement Date" of 1/05/06 - 2/04/06 Exhibit G.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 31.

32. In spite of its requirements under its own contract and under the Fair Credit Billing Act, 15 U.S.C. § 1666 and Regulation Z, 12 C.F.R. § 226.13, *et seq.*, on January 26, 2006, Chase sent Hill a letter in which it failed to provide him with an intelligible explanation for the basis for the interest jumping and it failed to provide any of the requested documentation. *See* Exhibit H.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 32.

33. Shortly thereafter, Chase sent Plaintiff another inaccurate bill with the statement with a "Statement Date" of 02/05/06 - 03/04/06 for the credit card account. *See* Exhibit I.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 33.

34. As a result, Hill sent Chase a follow up billing error notice on April 4, 2006, further explaining his dispute. *See* Exhibit J.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 34.

35. On April 14, 2006, in response to Hill's April 4, 2006 letter, Chase sent Hill a form letter that demonstrates that Chase did not even read Hill's letter. *See* Exhibit K. For example, the Chase's letter references "statutory provisions cited" when none exist in Hill's letter. Chase's letter refers to a "lien on the account" when on information and belief, the account is an ordinary credit card without any security interest or lien as that word is used in the law. Next, Chase's letter references some sort of conspiracy by consumers to avoid paying the credit card account, when no such statement is being made by Hill. Finally, the Chase's letter states unequivocally, in violation of the Fair Credit Billing Act, 15 U.S.C. § 1666 and Regulation Z, 12 C.F.R. § 226.13, *et seq.*, that it will not assist Hill further and will no longer correspond in writing or by phone on the matter.

**ANSWER:** MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 35.

36. As neither Chase's January 26, 2006 response to Hill's first notice of billing error nor its April 14, 2006 response to Hill's notice of billing error provide any explanation or

7

correction to Hill's account and also fail to provide the documentation requested, Chase violated the Fair Credit Billing Act, 15 U.S.C. § 1666 and Regulation Z, 12 C.F.R. § 226.13, *et seq*.

**ANSWER:**   MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 36.

37.   Hill received a number of bills which also included improper charges, due to the fact that Chase had not complied with the Fair Credit Billing Act, 15 U.S.C. § 1666 and Regulation Z, 12 C.F.R. § 226.13, et seq. *See* Hill's credit card statement with a "Statement Date" of 3/05/06 - 4/04/06 and 4/05/06 - 5/04/06 attached as Exhibit L.

**ANSWER:**   MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 37.

38.   Hill sent yet another request for compliance on June 11, 2006 and received no response, *See* Group Exhibit M.

**ANSWER:**   MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 38.

39.   Hill later checked his credit report and discovered that despite the fact that the account was being disputed under the Fair Credit Billing Act, 15 U.S.C. § 1666 and Regulation Z, 12 C.F.R. § 226.13, *et seq.*, Chase had neither reported to the credit reporting agencies that the account was in dispute nor questioned and had not informed the Plaintiff that it was going to report the account to TransUnion. Thus, Chase violated the Act again. See the relevant portion of the TransUnion Credit Report on this account attached as Exhibit N.

**ANSWER:**   MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 39.

40.   The next violation by Chase was to send the account to Mann Bracken, L.L.C. for collection without first telling Hill that it was going to report the debt to Mann Bracken, L.L.C. or inform Mann Bracken, L.L.C. that the debt was in dispute.

**ANSWER:**   MBLLC lacks knowledge or information sufficient to admit or deny the allegations in paragraph 40.

41.   On September 8, 2006, Hill was sent a collection letter from Mann Bracken, L.L.C. a copy of which is attached as Exhibit O.

**ANSWER:** MBLLC admits that on September 8, 2006, Hill was sent a letter from MBLLC a copy of which is attached as Exhibit O.  Said letter speaks for itself.  MBLLC denies the remaining allegations in paragraph 41.

42. The letter from Mann Bracken, L.L.C. violates the Fair Debt Collection Practices Act, 15 D.S.C. § 1692 *et seq.* in that it makes a claim for $11,592.68 as if the amount requested was purely principle [sic].

**ANSWER:** MBLLC denies the allegations in paragraph 42.

43. In response to the demand for payment, on September 20, 2006, Hill sent Mann Bracken, L.L.C. a letter under 1692c to cease all communication with him. Mann Bracken, L.L.C. received the letter on September 25, 2006. See Group Exhibit P.

**ANSWER:** MBLLC admits that a letter was sent to MBLLC dated September 20, 2006, which speaks for itself.  MBLLC admits that it received said letter on or about September 25, 2006.  MBLLC denies all other allegations in paragraph 43.

44. Despite Hill's request that Mann Bracken, L.L.C. cease communication with him, Mann Bracken, L.L.C. disregarded its obligations under § 1692c and sent Hill another collection letter on October 10, 2006.  *See* Exhibit Q.

**ANSWER:** MBLLC admits that it sent the original of Exhibit Q to Hill on October 10, 2006.  MBLLC denies all other allegations in paragraph 44.

45. The October 10, 2006 letter sought to collect the debt through settlement by offering to settle the principle balance of $11,592.68 for 75% of the balance due.  See Exhibit Q.

**ANSWER:** MBLLC denies the allegations in paragraph 45 and states that Exhibit Q speaks for itself and should be read in its entirety and that plaintiff has mischaracterized Exhibit Q.

46. The October 10, 2006 letter made a false and deceptive representation in that it represented that the amount of $11,592.68 was made up entirely of principle [sic] as opposed to interest and other fees and charges.

**ANSWER:** MBLLC denies the allegations in paragraph 46.

47. Further, James Branton, who signed the letter on behalf of Mann Bracken, LLC, is not licensed to practice law in Indiana and as such, was engaged in the unauthorized practice of law by signing a demand for arbitration to be tried in Indiana.

9

**ANSWER:** MBLLC denies the allegations in paragraph 47, except that MBLLC admits that James Branton signed the October 10, 2006 letter on behalf of MBLLC and that Mr. Branton is not licensed to practice law in Indiana.

48. This demand for arbitration also references an agreement different than the agreement that Wachovia allegedly first sent to Hill. *See* a copy of the documents turned over by the Defendant bates stamped Al through A9, attached as <u>Exhibit R,</u> in comparison to the purported agreement referenced in the demand for arbitration attached to Mann Bracken, L.L.C.'s October 10, 2206 letter.

**ANSWER:** MBLLC denies the allegations in paragraph 48.

49. Mann Bracken, L.L.C.'s arbitration demand fails to state a claim under the NAF's own code of civil procedure. Rule 12 of the NAF rules states, in relevant part:

**RULE 12. Initial Claim.**

A. <u>An Initial Claim,</u> which begins an arbitration in accord with Rule 6 of this Code, <u>shall include</u>:

    (1) A statement in plain language of the dispute or controversy, the facts and the law (if known) supporting the Claim, tile specific relief requested and the reasons supporting the relief, the specific amount and computation of any money or damages, tile specific value of non-monetary or other relief, the specific amount and computation of any interest, costs, and attorney fees under Rule 12B, and other relevant and reliable information supporting the Claim;

    (2) <u>A copy of the Arbitration Agreement</u>, or, if not in the possession of the Claimant, notice of the location of a copy of the Arbitration Agreement;

    (3) A copy of available Documents that support the Claim.

(emphasis added).

**ANSWER:** NAF Rule 12 speaks for itself. MBLLC denies all other allegations in paragraph 49.

50. In its arbitration demand, Mann Bracken, L.L.C. failed to attach a copy of the alleged arbitration agreement, failed to make a statement that such agreement was not in its possession, and failed to make a statement that identified where the arbitration agreement was located.

**ANSWER:** MBLLC denies the allegations in paragraph 50.

51. In response to the demand for arbitration, Hill wrote Mann Bracken, L.L.C. and the arbitration forum informing them that there was no agreement to arbitrate. He objected to arbitration of the case under Rule 13A (2) of the NAF rules. A copy of the notice of objection is attached as Group Exhibit S.

**ANSWER:** MBLLC admits the allegations in paragraph 51, but states that Hill's letter speaks for itself and Hill's objections to the arbitration had no merit and were rejected by the arbitrator whose award is binding on Hill.

52. Despite Hill's objection to the arbitration, NAP and Mann Bracken, L.L.C. set the matter for a hearing before an arbitrator located in a judicial district other than where the Plaintiff resided. *See* NAF letter of December 01, 2006 setting the matter before John Kite in Terre Haute, Indiana, attached as Group Exhibit T. Hill is located in Hobart, Indiana, which is located in the Northern District of Indiana. However, Terre Haute is located in the Southern District of Indiana.

**ANSWER:** MBLLC denies the allegations in the first sentence of paragraph 52. It was NAF, not MBLLC, who set the hearing before the arbitrator.

53. An award was entered by the arbitrator against the Plaintiff on January 16, 2006, a copy of which is attached as Exhibit U, even though: 1) Defendants did not provide NAF a copy of the arbitration agreement as required by NAF, even though the existence of the agreement was disputed; and 2) Mann Bracken, L.L.C. brought the action in violation of the FDCPA by bringing the legal action in a judicial district other than the one in which the Plaintiff resides.

**ANSWER:** MBLLC admits that an award was entered by the arbitrator against the plaintiff on January 16, 2006, and a copy of the award is attached as Exhibit U to the Second Amended Complaint. MBLLC denies all other allegations in paragraph 53.

## COUNT I

Defendant MBLLC makes no answer to the allegations in Count I, as Count I is not directed to MBLLC.

## COUNT II

*Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., Against Mann Bracken, L.L.C.*

73. Plaintiff restates, realleges and incorporates herein by reference paragraphs 1-53 as if set forth fully in this count.

6259329v1 881998

**ANSWER:** MBLLC adopts and restates its answers to paragraphs 1-53 above as and for its answer to paragraph 73 of Count II.

*Class Allegations*

74. This Count is brought on behalf of a class, defined as <u>Class C</u>. <u>Class C</u> consists of all persons who meet the following criteria: (a) within one year prior to the filing of this action; (b) were sent a collection letter bearing Mann Bracken, L.L.C.'s letterhead in the form represented by its letter of October 10, 2006; (c) which sought to collect an alleged debt owed to Chase; and (d) which was not returned by the postal service as undelivered.

**ANSWER:** MBLLC admits that Plaintiff purports to bring Count II on behalf of a class as defined in paragraph 74, but MBLCC denies that grounds for class certification exist in this case and otherwise denies the allegations in paragraph 74.

75. The claims asserted in this case satisfy the requirements of Rule 23(a) because:

   a. Based on the fact that the collection letters that are at the heart of this litigation are mass-mailed form letters, the class is so numerous that joinder of all members is impracticable.

   b. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the contents of <u>October 10, 2006 letter</u> contain false and deceptive language that violate the Fair Debt Collection Practices Act.

   c. The only individual issue is the identification of the consumers who received the letters, (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendants.

   d. The claims of Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

   e. Plaintiff will fairly and adequately represent the class members interests.

   f. Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. Plaintiff's interests are consistent with those of the members of the class.

**ANSWER:** MBLLC denies the allegations in paragraph 75.

76. Class action treatment is appropriate under Rule 23(b)(3) because a class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. 1692(k). The members of the class are generally unsophisticated individuals, whose rights will

6259329v1 881998

not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

**ANSWER:** MBLLC denies the allegations in paragraph 76.

77. Collection letters, such as those sent by Defendant are to be evaluated by the objective standard of the hypothetical "unsophisticated consumer."

**ANSWER:** MBLLC denies the allegations in paragraph 77.

*Violations of Sections 1692e and 1692e(2) - Misrepresentations of the Character of the Debt On Behalf of the Class*

78. Section 1692e of the FDCPA provides, in relevant part:

*A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .*

\*\*\*

*(2) The false representation of (A) the character, amount, or legal status of any debt; or*

**ANSWER:** Section 1692e of FDCPA speaks for itself and should be read in its entirety, together with other sections of the FDCPA. Except as expressly set forth in the FDCPA, MBLLC denies all other allegations on paragraph 78.

79. The use of the form letter dated October 10, 2006 violates Section 1692e and Section 1692e(2) of the FDCPA in that it misrepresents the character, amount or legal status of the debt allegedly owed by Plaintiff and the members of <u>Class C</u>.

**ANSWER:** MBLLC denies the allegations of paragraph 79.

*Violations of Section 1692f(1) - Collection of Unauthorized Amounts on behalf of the Plaintiff individually*

80. Section 1692f(1) of the FDCPA provides, in relevant part:

*A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:*

\*\*\*

13

> *(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.*

**ANSWER:** Section 1692f(1) of FDCPA speaks for itself and should be read in its entirety, together with other sections of the FDCPA. Except as expressly set forth in the FDCPA, MBLLC denies all other allegations on paragraph 80.

81. Use of the form letter dated October 10, 2006 violates Section 1692f and Section 1692f(1) of the FDCPA because Defendant attempts to collect amounts not expressly authorized and permitted by law, namely interest at a rate that is not permitted under the card member agreement. Plaintiff was not late in paying in December 2005 as evidenced by the December 29, 2005, online payment receipt and the December 2005 invoice attached to Plaintiff's complaint. Further, as the amount of interest was disputed under the Fair Credit Billing Act, 15 U.S.C. §1666 and Regulation Z, 12 C.F.R. § 226.13, et seq., and Chase never complied with the Act's billing dispute requirements such as providing documentation requested, the Chase and its attorneys were prohibited from collecting these amounts as well as among other things, the over the limit fees or the late fees.

**ANSWER:** MBLCC denies the allegations in paragraph 81.

### *Violations of Section 1692c - Individually*

82. Despite the request to cease communication, Mann Bracken, L.L.C. did not do so and violated § 1692c when it sent a second demand letter on October 10, 2006.

**ANSWER:** MBLLC denies the allegations in paragraph 82.

### *Violations of Section 1692i - Individually*

83. Mann Bracken, L.L.C. brought a legal action against the Plaintiff before NAF in Minnesota and proceeded to a hearing before an arbitrator located in Southern Indiana, with a case administrator located outside the State of Indiana. This violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692i.

**ANSWER:** MBLLC denies the allegations in paragraph 83.

### COUNT III

Defendant MBLLC makes no answer to the allegations in Count III, as Count III is not directed to Defendant MBLLC.

## COUNT IV

Defendant MBLLC makes no answer to the allegations in Count IV, as Count IV is not directed to Defendant MBLLC.

## AFFIRMATIVE DEFENSES

Defendant, MANN BRACKEN, L.L.C. asserts the following Affirmative Defenses to Count II of the Second Amended Class Action Complaint:

1. The Court lacks subject matter jurisdiction to address the claim in Count II because there was an arbitration agreement between the parties. Said arbitration agreement governed not only claims between plaintiff and Chase but also Chase's agents, including MBLLC.

2. The National Arbitration Forum arbitrator issued an arbitration award in favor of Chase and against plaintiff relating to the credit card account. Therefore, plaintiff's claims are barred by the doctrine of arbitration and award.

3. Plaintiff's cause of action against MBLCC is an improper attempt to vacate the National Arbitration Forum arbitration award.

4. Plaintiff's claims are barred by the doctrine of res judicata.

5. Plaintiff's claims are barred by the doctrine of collateral estoppel.

6. Plaintiff waived his claims against MBLLC.

7. Plaintiff's action is barred because it is a fraudulent attempt at avoiding a debt owed on a credit card account.

8. Plaintiff's claim against MBLLC is barred by the bona fide error doctrine. If there was an error by MBLLC (which is disputed), it resulted from a bona fide error notwithstanding maintenance of procedures reasonably adapted to avoid any such error.

9. Plaintiff's claims are barred by the doctrine of laches.

6259329v1 881998

10. Plaintiff failed to mitigate his damages.

WHEREFORE, MBLLC prays that this action be dismissed, that judgment be entered in favor of MBLLC and against Plaintiff and that this Court award costs and such other and further relief as the Court deems just and proper to MBLLC.

                MANN BRACKEN, L.L.C., Defendant

                By: /s/Jennifer W. Weller
                    One of its Attorneys

Jennifer W. Weller
jweller@hinshawlaw.com
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
312-703-3001 Fax

6259329v1 881998