UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| DANIEL HILL, | ) | |
|---|---|---|
| Plaintiff | ) | |
| vs. | ) | CAUSE NO. 2:07-CV-82 RM |
| CHASE BANK USA, N.A., | ) | |
| Defendant | ) | |

OPINION and ORDER

Plaintiff Daniel Hill sues against Chase Bank USA, N.A. alleging violations of the Fair Credit Billing Act (FCBA), 15 U.S.C. § 1666 *et seq.*,[1] Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, and Equal Credit Opportunity Act (ECOA), 15 U.S.C. 1691 *et seq.*.[2] Chase has moved to dismiss the FCBA and FAA claims under Fed. R. Civ. P. 12(b)(6) [Doc. No. 54] and moved for motion for judgment on the pleadings on the ECOA claim under Fed. R. Civ. P. 12(c) [Doc. No. 53]. These motions have lain under advisement far too long — inexcusably long — for which the court can do no better than apologize to the parties for its delay, and rule. For the reasons that follow, the court GRANTS Chase's motion to dismiss the FCBA claim (Count I), DENIES the motion to dismiss the FAA claim (Count III); and

---

[1] Mr. Hill brought the FCBA claim (Count I) as a class action.

[2] Mr. Hill's claim against co-defendant Mann Bracken, LLC (Count II) was dismissed by order dated July 3, 2008.[Doc. No. 89].

GRANTS the motion for judgment on the pleadings on Mr. Hill's ECOA claim (Count IV).

I

The same standard governs motions to dismiss under Fed. R. Civ. P. 12(b)(6) and Rule 12(c) motions for judgment on the pleadings. Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 619 (7th Cir. 2007); Alexander v. City of Chicago, 994 F.2d 333, 336 (7th Cir. 1993). The complaint's factual allegations are taken as true and viewed in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bernard v. United Township High School Dist. 30, 5 F.3d 1090, 1091 (7th Cir. 1993); Gomez v. Illinois State Bd. of Education, 811 F.2d 1030, 1033 (7th Cir. 1987). The defendant's motions can be granted only if it is clear from the pleadings that the plaintiff can prove no set of facts upon which relief could be granted. Moss v. Martin, 473 F.3d 694, 698 (7th Cir. 2007); Forseth v. Village of Sussex, 199 F.3d 363, 368 n.6 (7th Cir. 2000). The court may not look beyond the pleadings, but can consider documents incorporated by reference in, or attached to, the pleadings, *see* FED. R. CIV. P. 10(c); and all uncontested allegations to which the parties had an opportunity to respond are taken as true. United States v. Wood, 925 F.2d 1580, 1581-1582 (7th Cir. 1991).

II

In 1991, Mr. Hill obtained an open-ended credit card account with Wachovia Bank. Chase subsequently acquired Mr. Hill's account, and Mr. Hill continued to use the Chase card and to make payments on his account until January 2006.

Mr. Hill made a late payment in October 2005, and in January 2006, Chase notified him that it was increasing the APR on his account to prime plus 20.99% due to late payments, and had adjusted his account to reflect the additional finance charge that should have been assessed on his December 2005 statement. The letter advised that Mr. Hill should "refer to [his] cardmember agreement for details regarding the APR that may be applied to all balances as of the first day of the billing cycle in which a late payment or overlimit situation occurs."

Mr. Hill responded with a letter to Chase that stated in relevant part:

> This letter is being sent to you to dispute the inaccuracies on my account with Chase/Cardmember Services. I am disputing the percentage rate on my account along with requesting a full validation of my account.
> In accordance with Fair Debt Collection Practices Act, 15 USC 169g Sec. 809(b), I am disputing my debt with Chase Cardmember Services and requesting validation. This is NOT a request for "verification" or proof of my mailing address, but a request for VALIDATION made pursuant to the above named Title and Section. I respectfully request that your offices provide me with competent evidence that I have legal obligation to pay you.
> What do I need you to provide as the debt verification:
> • What the money you say I owe is for;
> • Explain and show me how you calculated what you say I owe;
> • Provide me copies of any signed papers that show I agreed to pay what you say I owe;
> • Identify the original creditor;
> • Complete payment history, starting with the original creditor. (I need to have proof of my payment history with original Creditor, what the amount of the debt was

3

> when the creditor assigned the debt, and what fees/interest has been tacked on to this debt and how you/they determined these fees.)...
> - Copy of the original signed loan agreement or credit card application. (My contract with the original creditor establishing the debt between us.)

The balance on Mr. Hill's account was at or near his credit limit when he sent the letter and stopped making payments on his account.

Chase responded to Mr. Hill's request by letter in January 2006 informing Mr. Hill that it had complied with all applicable federal and state laws and stated that:

> When you accepted the credit card account noted above, you made an honorable agreement to accept the terms and conditions in the Cardmemeber Agreement you received when the account was initially opened and amended, thereafter. This Cardmember Agreement represents a contractual obligation expressly stating that the Cardmember promises to pay for all purchases and cash advances made by the Cardmember or authorized persons...Your use of the account signifies your acceptance of the terms and conditions associated with the account.

In April 2006, Mr. Hill wrote a second letter to Chase disputing the $9,629.14 balance shown on the January 5, 2006 – February 5, 2006 billing statement (reflecting a payment due date of March 1, 2006). The letter stated:

> I am writing in regard to the above account. I believe my most recent statement, March 1, 200[6] is inaccurate.
>
> I am disputing the above amount because I believe that you failed to credit my account for prepayments you agreed to credit on the statement dated March 1, 2006. It was my understanding that when I entered into the agreement with you that you would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in the statement dated March 1, 2006. They do not appear in

the statement and I am wondering why. The amount of the credits on the prepayments of money or credit accepted by you should be the approximate amount that I listed above. I am making this billing inquiry since I am[] uncertain of all dates of the prepaid credits and also since there may be additional credits that I am entitled to. Please provide me with a written explanation of why these credits are not showing.[3]

Still in April 2006, Chase responded to Mr. Hill, rejecting his demand and advising him that there was a balance currently due and payable on his account.

Mr. Hill sent Chase a third letter in June 2006, raising the amount in dispute to $10,894.51, indicating that Chase hadn't responded to his April request, and encouraging Chase "to comply with the resolution procedures to avoid noncompliance." Chase didn't respond to that letter.

Chase referred the account to Mann Bracken, LLC for collection. Mann Bracken advised Mr. Hill by letter in September 2006 that the debt had been referred for collection, asked Mr. Hill to contact their office if he wished to resolve the matter or had any questions about the debt, and informed him that Chase would honor the binding arbitration provision contained in his contract with

---

[3] This letter is virtually identical to the letter sent by the plaintiff in Carmack v. Chase Manhatten Bank (USA), 521 F.Supp.2d 1017, 1020-1021 (N.D. Cal. 2007), which stated:
    I am writing regarding the above account. I believe that my most recent statement, September 11, 2005 is inaccurate.
    I am disputing the above amount because I believe you failed to credit my account for prepayments you agreed to credit on the statement dated September 11, 2005. It was my understanding that when I entered into the agreement with you that you would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in the statement dated September 11, 2005. . . . Please provide me with a written explanation why these credits are not showing.

5

Chase, "if we are unable to reach satisfactory amicable arrangements." The letter also provided that: "We will assume the debt is valid unless you dispute the validity of the debt or any portion of the debt within thirty days after receipt of the notice." Mr. Hill responded in September, acknowledging receipt of the demand for payment, and notifying Mann Bracken that he wasn't waiving his right to dispute the alleged debt, but was "under no obligation to respond as a result of Chase Manhattan Bank's default," and that Mann Bracken should cease communication.

In October 2006, Mann Bracken notified Mr. Hill that Chase had filed a claim with the National Arbitration Forum, and sent him a copy of the claim, together with an offer to settle his account for 75 percent of the principal balance of $11,592.68. The claim alleged that Mr. Hill breached the terms of the cardmember agreement by failing to honor its payment terms, sought the balance due on his account, interest on that balance, and attorney fees, and identified the arbitration and default provisions of the agreement under which Chase was proceeding.[4]

The Notice of Arbitration that accompanied the claim provided:

---

[4] The arbitration provision cited in the claim provided in relevant part that:
> Any claim, dispute or controversy by either yo or us against the other (or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other) arising from or relating in any way to you Account, transactions on your Account, our relationship, this Agreement or any provisions of this Agreement ("Claim"), including Claims regarding the applicability or validity of this arbitration clause, shall be resolved exclusively and finally by binding arbitration....

> IF YOU DO NOT SERVE THE CLAIMANT AND FILE WITH THE FORUM A WRITTEN RESPONSE, AN AWARD MAY BE ENTERED AGAINST YOU. AN ARBITRATION AWARD MAY BE ENFORCED IN COURT AS A CIVIL JUDGMENT.
> YOU HAVE THIRTY (30) DAYS TO RESPOND FROM RECEIPT OF SERVICE.
>
> You have a number of options at this time. You may:
>
> 1. *Submit a written Response to the Claim*, stating your reply and defenses to the Claim, together with documents supporting your position....If you fail to respond in writing to the Claim, an Award may be entered against you and in favor of the Claimant and you will lose your case.
>
> 2. *Demand a Document Hearing or a Participatory Hearing.* You may request a Hearing in your Response or in a separate writing. Unless you have agreed otherwise, an In-person Participatory Hearing will be held in the Judicial District where you reside or do business....
>
> 3. *Have other options.* You may seek the advice of an attorney or any person who may assist you regarding this arbitration. You should seek this advice promptley so that your Response can be served and filed within the time required by the Code of Procedures. If you have any questions or need help in responding, you may contact the Forum.

Mr. Hill responded with a notice of objection contending that he never consented or agreed to arbitration. The Arbitration Forum acknowledged receipt of his response in a December 2006 letter, and informed Mr. Hill that an arbitrator had been appointed, that a document hearing would be held in not more than thirty days, and that Mr. Hill should file any additional submissions he wanted to be considered. Mr. Hill didn't respond or provide any documentation for the arbitration, and on January 16, 2007, an award was entered in Chase's favor in

the amount of $13,611.00. The National Arbitration Forum sent Mr. Hill a copy of the award the next day.

In February 2007, Mr. Hill filed a *pro se* complaint against Chase in Lake Superior Court, alleging violations of the FCBA, breach of contract, and violations of his due process rights and right to jury trial. Chase removed the case to federal court and, in September 2007, Mr. Hill filed his first amended complaint alleging violations of the Fair Credit Billing Act and Regulation Z and setting forth grounds for a motion to vacate the arbitration award based upon the finding that the arbitrator exceeded his authority or, alternatively, no valid agreement to arbitrate existed between the parties. Mr. Hill filed a second amended complaint in November 2007 making minor changes to the allegations set forth in the first amended complaint and adding a claim that Chase violated the Equal Credit Opportunity Act.

III

A

The Fair Credit Billing Act, 15 U.S.C. 1666, part of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, and implemented by Regulation Z, 12 C.F.R. §§ 226.1-226.35, "provides an avenue by which a debtor may challenge perceived billing errors on any credit card account statement and procedures that a creditor must follow in responding to properly raised billing errors." Esquibel v. Chase

Manhattan Bank USA, N.A._, 487 F.Supp.2d 818, 825 (S.D. Tex. 2007). Section 1666(a) provides in pertinent part:

> If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives...a written notice...from the obligor in which the obligor–
> (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,
> (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and
> (3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error,
> the creditor shall...
> (A) not later than thirty days after the receipt of the notice, send a written acknowledgment thereof to the obligor, unless the action required in subparagraph (B) is taken within such thirty-day period, and
> (B) not later than two complete billing cycles of the creditor (in no event later than ninety days) after the receipt of the notice and prior to taking any action to collect the amount, or any part thereof, indicated by the obligor under paragraph (2) either–
> (i) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness; or
> (ii) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obloigor's indebtedness....

> After complying with the provisions of this subsection with respect to an alleged billing error, a creditor has no further responsibility under this section if the obligor continues to make substantially the same allegation with respect to such error.

To state a viable claim under the FCBA, a debtor must allege "(1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of the bank issuing the card to comply with the procedural requirements of [15 U.S.C. § 1666(a)(A) and (B)]." Cunningham v. Bank One, 487 F. Supp. 2d 1189, 1191 (W.D Wa. 2007). Chase contends that Mr. Hill's FCBA claim is deficient on its face because the January and April letters weren't valid notices of billing error, were untimely, and didn't trigger a duty to comply with 15 U.S.C. § 1666(a)(A) and (B), and so can't be the basis of a violation under the FCBA. *Citing* Carmack v. Chase Manhattan Bank (USA), 521 F. Supp. 2d 1017 (N.D. Cal. 2007); Eicken v. USAA Federal Savings Bank, 498 F. Supp. 2d 954 (S.D. Tex. 2007); Esquibel v. Chase Manhattan Bank USA, N.A., 487 F. Supp. 2d 818 (S.D. Tex. 2007), Cunningham v. Bank One, 487 F. Supp. 2d 1189 (W.D. Wash. 2007); Dawkins v. Sears, Roebuck & Co., 109 F.3d 241 (5th Cir. 1997). Chase contends that even if the notices were valid and timely, TILA's one-year statute of limitations, 15 U.S.C. § 1640(e), bars Mr. Hill's FCBA claim relating to the January letter.

Mr. Hill responds that his letters assert not one, but two, valid billing errors: a request for clarification and documentary evidence under 15 U.S.C. § 1666(b)(2), and a computation error (the disputed interest rate) under 15 U.S.C. § 1666(b)(5), *citing* Eicken v. USAA Federal Savings Bank, 2006 WL 163371 (S.D. Tex. June 12,

10

2006); Raney v. First Nat'l Bank of Nebraska, Inc., 2006 WL 2588105 (E.D. Ky. Sep. 8, 2006), and that Chase received both letters within the statutory 60-day limit. Mr. Hill concedes that Chase responded to both letters, but says the responses were inadequate because Chase failed to explain why it believed the account was correct and to provide the documentation requested, and wrongfully attempted to collect the disputed amount, thereby violating the FCBA. Mr. Hill further contends that Chase waived the statute of limitations defense by failing to raise it as an affirmative defense in its answer.

Had Mr. Hill sought clarification and documentation of a specific "extension of credit" reflected on his January and February statements, or alleged that Chase made a computational or accounting error on those statements, as he now contends, his letters might have satisfied the content requirement of 15 U.S.C. § 1666(a). *See* Langenfeld v. Chase Bank USA, N.A., 537 F.Supp.2d 1181, 1201 (N.D. Okla. 2008) (recognizing that "there could be an instance involving a true 'accounting error' in connection with a finance charge, such as the creditor utilizing an incorrect rate or miscalculating the interest applied to a specific charge"). But that's not what the notices in this case allege.

Mr. Hill doesn't dispute that he made at least one late payment and his letters don't challenge Chase's stated reasons for increasing the interest rate on his account, dispute the amount of the finance charges and fees assessed on his January and February statements, state why he believed the interest rate or payment history was incorrect, or dispute any other extension of credit reflected

11

on his January and February statements. Instead, Mr. Hill disputed the entire balance due on his account, requested verification and documentation of every purchase, interest charge, fee, and payment (or "prepayment") on his account from its inception, and stopped making payments on his account.

The parties dispute whether erroneous finance charges and fees are valid billing errors within the meaning of § 1666(b)(2) or (5), but persuasive authority holds under similar circumstances that they are not. *See* Langenfeld v. Chase Bank USA, N.A., 537 F.Supp.2d at 1198-1200; Esquibel v. Chase Manhattan Bank USA, N.A., 487 F.Supp.2d at 828-829.

> [T]he dispute process set up by § 1666(a) forces a creditor to timely and adequately respond to a computational error identified by the obligor. This necessarily contemplates that a creditor has made a specific computational or accounting mistake on a particular statement, not a global mistake that will infinitely impact the current balance owed and therefore result in a never-ending "computation" error.

Langenfeld v. Chase Bank USA, N.A., 537 F. Supp. 2d at 1201.

Even if the alleged errors were valid billing errors, Mr. Hill's letters requested clarification and documentation of events which would have appeared on statements dating back to 1991, well outside the 60-day window of § 1666(a), and so were untimely. Langenfeld v. Chase Bank USA, N.A., 537 F. Supp. 2d at 1202-1203; Carmack v. Chase Manhattan Bank (USA), 521 F. Supp. 2d 1017 (N.D. Cal. 2007) Eicken v. USAA Federal Savings Bank, 498 F. Supp. 2d 954 (S.D. Tex. 2007); Cunningham v. Bank One, 487 F. Supp. 2d 1189, 1193-1194 (W.D. Wash. 2007). Without a valid and timely notice of billing error, there's no duty to

comply with § 1666(a)(A) and (B), and no violation of those sections. Id. at 1196-1203; *see also* Carmack v. Chase Manhattan Band (USA), 521 F. Supp. 2d 1017 (N.D. Cal. 2007); Eicken v. USAA Federal Savings Bank, 498 F. Supp. 2d 954 (S.D. Tex. 2007); Esquibel v. Chase Manhattan Bank USA, N.A., 487 F. Supp. 2d 818 (S.D. Tex. 2007).

Mr. Hill didn't address the merits of Chase's claim that TILA's one-year statute of limitations barred his FCBA claim or assert any grounds for tolling the statute, but argued only that Chase waived the argument by failing to raise it as an affirmative defense in its answer to the second amended complaint. The court disagrees. Although the statute of limitations is ordinarily an affirmative defense that must be pleaded under Rule 8(c), the court may dismiss a claim under Fed. R. Civ. P. 12(b)(6) if it is indisputably time-barred. Sanders v. Venture Stores, Inc., 56 F.3d 771, 775 (7th Cir. 1995). *See also* Small v. Chao, 398 F.3d 894, 898 (7th Cir 2005); Behavioral Institute of Indiana, LLC v. Common Council of the City of Hobart, 21 F.3d 775, 777 and n.3 (7th Cir. 1994). An FCBA violation occurs, and the statute of limitations begins to run, when the creditor fails to satisfy its compliance duties within the requisite time frame. Langenfeld v. Chase Bank USA, N.A., 537 F. Supp. 2d at 1204; Burnstein v. Saks Fifth Ave & Co., 208 F. Supp. 2d 765, 776 n. 18 (E.D. Mich. 2002). But as was previously discussed, Chase didn't have a duty to comply and no violation occurred because the notices of billing error were deficient on their face, so the statute of limitations never began to run. *See* Langenfeld v. Chase Bank USA, N.A., 537 F. Supp. 2d at 1204.

B

Mr. Hill alleges that Chase violated the Equal Credit Opportunity Act, which prohibits a creditor from discriminating against any applicant "because the applicant has in good faith exercised any right under [the Truth in Lending Act)." 15 U.S.C. 1691(a)(3). Mr. Hill claims Chase discriminated against him for trying to exercise his Fair Credit Billing Act rights when it failed to respond adequately to his notices of billing error and to provide requested documentation.[5]

As already discussed, Mr. Hill's letters to Chase didn't constitute valid and timely notices of billing error and didn't trigger a duty on Chase's part to respond under the FCBA. Mr. Hill's assertion that an "attempt" to exercise a right under the FCBA is all that is required to state a claim under § 1691 is inconsistent with the plain statutory language and unsupported by any legal authority. Under the circumstances, Mr. Hill can prove no set of facts upon which relief could be granted under either 15 U.S.C. § 1666 or § 1691.

C

In Count III of the second amended complaint, Mr. Hill asks the court to vacate the January 2007 arbitration award, contending that it is void and unenforceable because there was no agreement to arbitrate, the arbitrator

---

[5] Count IV of Mr. Hill's second amended complaint also alleged that Chase improperly implemented an increase in the interest rate on his credit card without notice to him, in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(2). That claim was dismissed with prejudice by order dated February 21, 2008 [Doc. No. 71].

exceeded his authority, and/or the arbitration agreement was substantively and procedurally unconscionable. Chase moved to dismiss his claim to the extent it asserts statutory grounds under the FAA for vacating the order, contending that Mr. Hill's statutory claims were raised for the first time in the first amended complaint filed in September 2007 and so are barred by 9 U.S.C. § 12, which requires that notice of the motion to vacate or modify "must be served upon the adverse party or his attorney within three months after the award is filed or delivered." [6]

Mr. Hill argues that § 12 doesn't bar his FAA claims because they arose out of the same conduct, transaction, or occurrence set out — or attempted to be set out — in his original complaint, and relate back to the filing of that complaint under Fed. R. Civ. P. 15(c)(1)(B). The court agrees.

Mr. Hill sought relief from the January 2007 arbitration award in his original complaint, alleging that there was no signed contract between the parties agreeing to arbitration, that the arbitrator lacked jurisdiction and exceeded his authority when he entered the award, that Chase obtained the arbitration award illegally and without authority, and that the award was entered in violation of his right to due process. The FAA claims raised in Mr. Hill's first and second amended complaints arose out of the same conduct, transaction, or occurrence set forth in the original complaint, which put Chase on notice that Mr. Hill was challenging

---

[6] Chase concedes that dismissal of the contract claim would be inappropriate at this time because the parties dispute the existence of an agreement to arbitrate.

the validity of, and seeking relief from, the arbitration award. Whether Mr. Hill can prevail on the merits of his claim remains to be seen, but the claims raised in Count III of the second amended complaint aren't time-barred under 9 U.S.C. § 12.

IV

The court GRANTS Chase's motion to dismiss Mr. Hill's claims under the Fair Credit Billing Act (Count 1)[Doc. No. 54]; DENIES the motion to dismiss the Federal Arbitration Act claims (Count III) [Doc. No. 54]; and GRANTS Chase's motion for judgment on the pleadings [Doc. No. 53] on Mr. Hill's claim under the Equal Credit Opportunity Act (Count IV).

SO ORDERED.

ENTERED:   January 6, 2010

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court